UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BRENDA LEE WOLFE,<br><br>               Plaintiff,<br>     v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security<br>              Defendant. | Civil No. 3:16-CV-00607<br><br>(Judge Kosik) |

## MEMORANDUM

The above-captioned action is one seeking review of a decision of the Acting

Commissioner of Social Security ("Commissioner"), denying Plaintiff Brenda Lee Wolfe's

("Wolfe") application for Social Security Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") under Title II and Title XVI. For the reasons set forth

below, we will vacate the decision of the Commissioner and remand the case to the

Commissioner for further proceedings.

## I. BACKGROUND

Disability insurance benefits are paid to an individual if that individual is disabled and

"insured"; that is, the individual has worked long enough and paid social security taxes. The last

date that a claimant meets the requirements of being insured is commonly referred to as the "date

last insured." It is undisputed that Wolfe met the insured status requirements of the Social

Security Act through June 30, 2008. (Tr. 1436).[1]

---

[1] References to "Tr. __" are to pages of the administrative record filed by the Defendant as part
of the Answer (Docs. 10 and 11) on July 14, 2016.

Wolfe was born on May 26, 1982. (Tr. 117, 1460). Wolfe has a 10th grade education and is able to communicate in English. (Id.). She has past work experience as a cashier, waitress, bartender, and food delivery driver (Tr. 122, 2015, 397, 746, 1513, 1566-67, 2019).

Wolfe's alleged impairments are depressive disorder, bipolar disorder with psychotic features, personality disorder, post traumatic stress disorder, impulse control disorder, and panic disorder. (Doc. 14, Ptf.'s Br., at 2).

This case has a protracted history of filings and remands from the District Court to the Commissioner for further administrative proceedings.[2] This case is now appealed to the District Court for the third time following a fourth denial decision by the Commissioner filed on March 23, 2015. (Tr. 1433 - 1461; Doc.14, at 1). The Appeals Council denied Wolfe's subsequent request for review, making the March 23, 2015, the final decision of the Commissioner. (Tr. 1388-1393).

Wolfe filed a complaint in this Court on April 12, 2016. (Doc. 1). The Commissioner filed an answer on July 14, 2016. (Doc. 10). After supporting and opposing briefs were submitted (Docs. 14,15,16), the appeal[3] became ripe for disposition.

## II. STANDARD OF REVIEW

When considering a social security appeal, the Court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91 (3d Cir. 2007); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008). However, our review

---

[2] A detailed procedural history is set forth in the record at Tr. 420-422 and 1433-34, and is incorporated herein by reference.

[3] Under the Local Rules of Court, "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D. Pa. Local Rule 83.40.1.

of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether

those findings are supported by "substantial evidence." Id. The factual findings of the

Commissioner, "if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. §

405(g). "Substantial evidence does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Johnson, 529 F.3d at 200 (3d Cir. 2008) (quoting Hartranft v. Apfel, 181 F.3d 358,

360 (3d Cir. 1999)) (internal quotations and citations omitted). Substantial evidence has been

described as more than a mere scintilla of evidence but less than a preponderance. Brown v.

Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). "It means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427

(3d Cir. 1999) (citing Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)) (quoting Richardson

v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The Third Circuit Court of

Appeals has stated,

> [O]ur decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citing Kent v. Schweiker, 710 F.2d 110, 114

(3d Cir. 1983); Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986)). Therefore, a court

reviewing the decision of the Commissioner must scrutinize the record as a whole. Id. (citing

Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)).

## III. SEQUENTIAL EVALUATION PROCESS

The plaintiff must establish that there is some "medically determinable basis for an

impairment that prevents him from engaging in any substantial gainful activity for a statutory

twelve-month period." Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting

Plummer, 186 F.3d at 427) (internal quotations omitted). "A claimant is considered unable to

engage in any substantial gainful activity 'only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy . . . .'" Fargnoli, 247 F.3d at 39 (quoting 42

U.S.C. § 423(d)(2)(A)). The Commissioner follows a five-step inquiry pursuant to 20 C.F.R. §

404.1520 to determine whether the claimant is disabled. In Plummer, the Third Circuit Court of

Appeals set out the five-steps:

> In step one, the Commissioner must determine whether the claimant is currently
> engaging in substantial gainful activity. 20 C.F.R. § [404.]1520(a). If a claimant is
> found to be engaged in substantial activity, the disability claim will be denied.
> Bowen v. Yuckert, 482 U.S. 137, 140 (1987) . . . . In step two, the Commissioner
> must determine whether the claimant is suffering from a severe impairment. 20
> C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are
> "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's
> impairment to a list of impairments presumed severe enough to preclude any gainful
> work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed
> impairment or its equivalent, the analysis proceeds to steps four and five. Step four
> requires the ALJ to consider whether the claimant retains the residual functional
> capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant
> bears the burden of demonstrating an inability to return to her past relevant work.
> Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).
>
> If the claimant is unable to resume her former occupation, the evaluation moves to
> the final step. At this stage, the burden of production shifts to the Commissioner, who

must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See, [sic] Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

Plummer, 186 F.3d at 428.

## IV. DISCUSSION

The ALJ went through each step of the sequential evaluation process. At step one, the ALJ found that Wolfe had not engaged in substantial gainful activity since December 31, 2006, the alleged onset date. (Tr. 1436). At step two, the ALJ found that Wolfe had the following severe impairments: depressive disorder; bipolar disorder; alcohol, vicodin, Tylenol 3 and cocaine dependence; personality disorder; anxiety disorder; panic disorder; mood disorder; impulse control disorder; schizoaffective disorder; cluster B personality; learning disorder by history; degenerative disc disease; and carpal tunnel syndrome (CTS) status post release, status post flexor tenosynovectomy of the carpel tunnel. (Id.). At step three, the ALJ found that Wolfe's impairments did not meet or equal a listed impairment. (Tr. 1437). The ALJ found at step four that Wolfe had the residual functional capacity ("RFC") to perform

> medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that [Wolfe] is limited to simple routine tasks and no complex tasks; a low stress environment defined as occasional decision making and occasional changes in the work setting; occasional interaction with supervisors and coworkers but no team type setting work; and no interaction with the public.

(Tr. 1440).

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Wolfe can perform.  (Tr. 1460).

The record in this case is 3,158 pages in length and we have thoroughly reviewed that record.  Wolfe appeals the ALJ's determination on four grounds: (1) the ALJ failed to assess all of the relevant evidence; (2) the ALJ erred in assessing the medical opinion evidence; (3) the ALJ erred in assessing Wolfe's mental RFC; and (4) the ALJ failed to explain the finding that Wolfe was capable of sustained competitive employment.

**Mental Medical Opinion Evidence**

We first address Wolfe's contention that the ALJ erred in assessing the medical opinion evidence.  Specifically, Wolfe argues that the ALJ did not properly assess the medical opinion evidence of Dr. Bell and uniformly assigned little weight to examining psychologists and significant weight to non-examining psychologists.

We begin our analysis with the basic tenet - where the ALJ finds that no treating source opinion is entitled to controlling weight, as in the instant case, the regulations provide that the weight of all non-controlling opinions by treating, examining, and non-examining medical sources should be evaluated based on certain factors.  Those factors include the examining relationship, the length of the treatment relationship and frequency of visits, nature and extent of the treatment relationship, whether the medical source supports the opinion with medical evidence, whether the opinion is consistent with the record as a whole, and the medical source's specialization.  20 C.F.R. § 404.1527(c)(1-5).  In addition, the ALJ should consider any other factors that tend to support or contradict the opinion that were brought to her attention, including "the extent to which an acceptable medical source is familiar with the other information in [the]

case record." 20 C.F.R. § 404.1527(c)(6). See Markoch v. Colvin, Civ. No. 14-cv-00780, 2015 WL 2374260, at *6 (M.D. Pa. May 18, 2015).

Additionally, the ALJ must consider all of the relevant evidence and give a clear explanation to support his or her findings. Fargnoli v. Massanari, 247 F.3d 34, 40-41 (3d Cir. 2001) (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)). If the ALJ discounts certain evidence, he must give some indication of the reasons for discounting that evidence. Fargnoli, 247 F.3d at 43. While the ALJ may choose whom to credit in her analysis, she "cannot reject evidence for no reason or for the wrong reason." Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000). The ALJ has the duty to adequately explain the evidence that she rejects or to which she affords lesser weight. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505-06 (3d Cir. 2009) (holding that because the ALJ did not provide an adequate explanation for the weight he gave to several medical opinions, remand was warranted). "The ALJ's explanation must be sufficient enough to permit the court to conduct a meaningful review." Morales v. Colvin, Civ. No. 14-cv-2330, 2016 WL 907743, at *8–9 (M.D. Pa. Mar. 2, 2016) (quoting In re Moore v. Comm'r of Soc. Sec., Civ. No. 11-3611, 2012 WL 2958243, at *2 (D.N.J. July 19, 2012) (citing Burnette v. Comm'r of Soc. Sec., 202 F.3d 112, 119-20 (3d Cir. 2000)).

The extensive record in this case reveals numerous medical opinions offered by treating physicians, non-treating examining reviewers, and non-treating non-examiners. Of all the mental medical opinions offered, the ALJ afforded the most weight, or "significant" weight, to the two state reviewing psychologists's opinions, Dr. Kowalski and Dr. Galdieri. (Tr. 1457). Dr. Kowalski's opinion was authored on December 14, 2007 and Dr. Galdieri authored his opinion

on July 23, 2009.  (Id.).  The remaining mental medical opinions authored by either non-treating

examiners or non-treating non-examiners were afforded "little" weight by the ALJ.  (Tr. 1440,

1456, 1458).

One such non-treating non-examining doctor was Dr. George S. Bell.  Dr. Bell was the

only psychiatrist to render a medical opinion in this case.  The others were Ph.D. psychologists.

At the request of counsel, Dr. Bell completed a psychiatric review of Wolfe.  In his May 29, 2014

opinion, Dr. Bell provides that his conclusions are based on the clinical records, independent

exams and court testimony provided to him by counsel for Wolfe.  He further basis his

conclusions on his experience as a medical expert for the Social Security Administration for over

10 years with over 2,000 cases reviewed, plus clinical experience of over 40 years as a general

adult psychiatrist.  (Tr. 2811).

Dr. Bell opines that the claimant meets two listings 12.06 and 12.08 with moderate

restrictions of activities of daily living, extreme difficulties in maintaining social functioning,

marked difficulties in maintaining concentration, persistence, or pace, and one or two episodes of

decompensation each extended duration.  (Tr. 2811, Ex. 48F and 49F).

The ALJ explained that she accorded "little" weight to Dr. Bell because "[t]here is

insufficient information regarding Dr. Bell's credentials[,] ... there is no specific information

regarding exactly what records and information Counsel provided to Dr. Bell for his review[,] ...

Dr. Bell himself fails to identify any specific document or record evidence to support his

statements and conclusions[,] ... [and] Dr. Bell is not a treating provider and in fact has never

examined the claimant."  (Tr. 1440).

As discussed above, an ALJ is required to give good reasons in her decision for the

weight given to a medical opinion. Further, the proffered rationale must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the opinion. Here, we find the ALJ's rationale suspect. First, after combing through the record, we were unable to locate any other medical expert's credentials listed in the record. We are unable to determine why the ALJ was concerned with Dr. Bell's credentials as opposed to any of the other doctor's credentials that rendered an opinion.

Second, regarding the records and information that Dr. Bell reviewed, we believe his May 29, 2014 letter adequately provides that he reviewed the clinical records, independent exams and court testimony. (Tr. 2811). Accordingly, Dr. Bell's review appears to encompass the entirety of the claim file as it existed in May, 2014. As Wolfe points out, this was five years after the last state review by psychologist Anthony Galdieri, Ph.D., on July 29, 2009. (Tr. 2642).[4]

As set forth above, while the ALJ may choose whom to credit in her analysis, she "cannot reject evidence for no reason or for the wrong reason." Morales, 225 F.3d at 316-18. For these reasons, we find that the ALJ did not provide an adequate explanation for the weight given to Dr. Bell's opinion, and remand is warranted. Diaz, 577 F.3d at 505-06; see Newton v. Colvin, Civ No. 13-cv-0160, 2015 WL 685898, at *17-18 (remanding case to the Commissioner of the Social Security Administration because the ALJ did not discuss or adequately discount or reject doctor's opinion in his decision). Consequently, the ALJ's decision cannot be said to be supported by substantial evidence.

Finally, it should be noted that this will be the third remand order by a federal court.

---

[4] The ALJ appears to also conclude that Dr. Bell's assessment only covers 2006 through 2011. (Tr. 1440). This strikes us as an error of fact. See Little v. Astrue, 2011 U.S. Dist. LEXIS 150308, at *27 (M.D. Pa. Sept. 14, 2011).

Wolfe has now waited more than nine years for her claim to be processed. Unfortunately, this Court is unable to reach a final resolution in this matter, and award of benefits is not proper at this time. Given the duration of this process, on remand, the Commissioner should promply reach a determination in accordance with this Opinion.

## V. CONCLUSION

Given the foregoing, we find that substantial evidence does not support the ALJ's medical opinion evidence assessment. Pursuant to 42 U.S.C. § 405(g), we will vacate the Commissioner of Social Security's decision and remand this case for further proceedings. We will decline to address Wolfe's other allegations of error, as remand may produce different results on these claims, making discussion of them moot.[5] Burns v. Colvin, 156 F. Supp. 3d 579, 598 (M.D. Pa. Jan. 13, 2016); see LaSalle v. Comm'r of Soc. Sec., Civ. No. 10-1096, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011). An appropriate order follows.

---

[5] We note that while the parties do not raise the issue of the ALJ's failure to address Dr. Bell's opinion at step 4 of the sequential evaluation process, we raise it so that the Commissioner will appropriately address it on remand. As noted by the ALJ, she considered Dr. Bell's opinion in evaluating the limitations identified in "paragraph B" criteria at steps 2 and 3 of the sequential evaluation process, which is not a residual functional capacity assessment but rather, is used to rate the severity of mental impairments at this step in the process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. (Tr. 1440).

10